IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY HELM,<br><br>                Defendant. | Criminal Action No. 19-00077-CFC |

Carly A. Hudson, ASSISTANT UNITED STATES ATTORNEY, Wilmington, Delaware

    *Counsel for United States*

Jeffrey Helm

    *Pro Se Defendant*

## MEMORANDUM OPINION

March 2, 2022
Wilmington, Delaware

*[signature]*

COLM F. CONNOLLY
CHIEF JUDGE

Pending before me is Defendant Jeffrey Helm's Motion for Compassionate Release Pursuant to Title 18 U.S.C. § 3582(c)(1)(A). D.I. 53. Section 3582(c)(1)(A)(i) empowers the Court to modify a term of imprisonment when "extraordinary and compelling reasons warrant such a reduction" after considering sentencing factors under § 3553. Helm contends that his sentence should be reduced because of the ongoing COVID-19 pandemic and his asthma, D.I. 53 at 5–11; Helm's "commendable prison conduct," D.I. 53 at 13–14; and the incapacity of the caregiver of Helm's daughter, D.I. 53 at 14–16. The Government opposes Helm's motion. *See* D.I. 54.

## I. BACKGROUND

Helm is 35 years old. He was sentenced to 60 months of incarceration for possession of marijuana with intent to distribute and 72 months of incarceration for possession of a firearm by a prohibited person, with the sentences to run concurrently. Helm has been detained since June 2019. Tr. of Oct. 1, 2020 Hr'g at 48. The Government states that Helm's anticipated release date is February 6, 2026. D.I. 54 at 3.

2

### A. Helm's Health and COVID-19 Risk

Helm has asthma and, according to the Government, a history of smoking, preexisting conditions that increase his risk of serious illness from COVID-19. D.I. 53 at 8; D.I. 55 at 4. Helm is currently incarcerated at Fort Dix and alleges that "persistent failures to take even the most modest possible [COVID] precautions" and "large-scale" outbreaks of COVID-19 at Fort Dix have left him vulnerable to "grave health consequences" from a COVID-19 infection. D.I. 53 at 8–11. The Government asserts that Helm lacks an asthma diagnosis; that Helm's nasal allergy symptoms are not severe; and that Helm previously tested positive for COVID-19 and recovered without symptoms. D.I. 55 at 4–5; D.I. 55, Exhibit A (medical records of Feb. 11, 2021). Further, according to the Government, "the Bureau of Prisons ('BOP') [has] made extensive changes to its operations" to respond to the pandemic and the BOP had fully vaccinated roughly 70 percent of Fort Dix's inmates, including Helm, as of January 11, 2022. D.I. 54 at 5–9; D.I. 55 at 5; D.I. 55, Exhibit A (medical records of Nov. 23, 2020, showing two doses of the Pfizer vaccine). As of February 23, 2022, there had been two deaths due to COVID-19 at Fort Dix. COVID-19: Coronavirus, Fed. Bur. Prisons (Accessed Feb. 24, 2022, 10:30 AM ET), https://www.bop.gov/coronavirus/.

### B. Helm's Conduct in Prison

Helm states and provides evidence that he has participated in extensive coursework while in prison. D.I. 53 at 13–14, 22. Helm also received multiple certificates lauding his vocational work at FDC Philadelphia; these certificates cited his willingness to "offer[] unofficial mentoring" and his status as a "model inmate." D.I. 53 at 23–28. While Helm stated that he "has not received a disciplinary report during his incarceration in the BOP," the Government provided evidence that Helm was sanctioned for possessing a hazardous tool on November 23, 2021. *Compare* D.I. 53 at 14, *with* D.I. 54-2 at 1.

### C. Caregiver for Helm's Daughter

Helm alleges that his daughter's caregiver and legal guardian suffers or has suffered from epilepsy, depression, and drug addiction, among other ailments, and that the "New York Division of Family Services opened a case of child endangerment in the past year"; Helm also alleges that his daughter is in the custody of Helm's mother-in-law, who "suffers complications from congestive heart failure." D.I. 53 at 15. Helm did not provide any evidence that either his daughter's caregiver or his mother-in-law had been deemed unfit to serve as guardian or that Helm has any custodial rights over his daughter.

## II. ANALYSIS

In general, a district court cannot modify a term of imprisonment once it has been imposed unless a defendant is eligible for a reduction of sentence pursuant to

3

18 U.S.C. § 3582(c). *Dillon v. United States*, 560 U.S. 817, 819, 130 S. Ct. 2683, 2687, 177 L. Ed. 2d 271 (2010) (quoting 18 U.S.C. § 3582(c)); *United States v. Mainor*, 725 F. App'x 85, 86 (3d Cir. 2018). Section 3582 was amended in 2018 as part of the First Step Act. Pub. L. No. 115-391, Sec. 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). Before the enactment of the First Step Act, only the Director of the Bureau of Prisons could file a motion seeking a sentence reduction, sometimes also called "compassionate release." Now a motion may be filed by either the Director of the Bureau of Prisons or the defendant, except the defendant may not file a motion until "after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). Here, Helm has filed the motion on his own behalf, and the Government concedes that Helm has met the exhaustion requirement. D.I. 54 at 5.

Although the First Step Act changed the process by which inmates can request a reduced sentence, it did not alter the statutory standards that must be met for that request to be granted. *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("The First Step Act added the procedure for prisoner-initiated motions while leaving the rest of the compassionate-release framework unchanged."). The Sentencing Reform Act of 1984 established the statutory standard for reducing a

sentence. Pub. L. No. 98-473, sec. 211, 98 Stat. 1837, 1987, 1998–99 (Oct. 12, 1984). Under that statute, a Court may reduce the term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; additionally, the court must "consider[] the factors set forth in section 3553(a) [the factors for sentencing] to the extent that they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).[1] The Sentencing Reform Act did not define what constitutes "extraordinary and compelling reasons," instead directing the Sentencing Commission to promulgate policy statements that do so. 28 U.S.C. §§ 994(a)(2)(C) and (t). Following enactment of the First Step Act, the Third Circuit has held that the Sentencing Commission's policy statements "can guide discretion" but may not serve "as an ultimate binding authority." *Andrews*, 12 F.4th at 260 (internal quotations and citations omitted). Under the relevant policy statement, U.S.S.G. § 1B1.13, a defendant is eligible for a sentence reduction if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court determines that three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of

---

[1] § 3582(c)(1)(A) also permits compassionate release under certain circumstances for individuals at least 70 years of age. 18 U.S.C. § 3582(c)(1)(A)(ii). That provision is inapplicable here.

5

any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2021).

A. **Extraordinary and Compelling Reasons**

Helm asserts that his preexisting conditions, combined with his risk of contracting serious illness from COVID-19; the incapacity of his daughter's caregiver; and his behavior while in prison collectively and individually constitute "extraordinary and compelling" reasons for compassionate release. D.I. 53 at 1.

While only a guide, the policy statement is helpful here. U.S.S.G. § 1B1.13 was first issued in November 2006 and its "Application Notes" section has been amended substantively at least three times since then. The Application Notes contain four categories of extraordinary and compelling reasons: (1) "Medical Condition of the Defendant," (2) "Age of the Defendant," (3) "Family Circumstances," and (4) "Other Reasons." U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1. The second and fourth categories are inapplicable here: The "Age of the Defendant" reason requires Helm to be at least 65 years old, which he is not. *Id.* at cmt. 1(B). The catchall "Other Reasons" requires a determination of "an extraordinary or compelling reason" by the Director of the Bureau of Prisons. *Id.* at cmt. 1(D). Because Helm filed this motion on his own behalf, the Director has made no such determination. The "Medical Conditions of Defendant" and "Family

6

Circumstances" reasons are potentially applicable. Helm also cites to his behavior while incarcerated, though it is not a consideration under the policy statement.

Additionally, I consider in guiding my analysis the ordinary and legal meanings of "extraordinary" and "compelling." Merriam Webster's Unabridged Dictionary defines "extraordinary" as "exceptional to a very marked extent" or "far from common," *Extraordinary*, Merriam Webster's Unabridged Dictionary (Accessed Feb. 25, 2022), https://unabridged.merriam-webster.com/unabridged/extraordinary, and defines "compelling" most pertinently as "tending to convince or convert by or as if by forcefulness of evidence," *Compelling*, Merriam Webster's Unabridged Dictionary (Accessed Feb. 25, 2022), https://unabridged.merriam-webster.com/unabridged/compelling. Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," *Extraordinary*, Black's Law Dictionary (11th ed. 2019), and "compelling need" as "[a] need so great that irreparable harm or injustice would result if it is not met," *Compelling Need*, Black's Law Dictionary (11th ed. 2019). *See also United States v. Andrews*, 2020 WL 4812626 (E.D. Pa. Aug. 19, 2020) (citing to Black's Law Dictionary), aff'd, 12 F.4th 255.

### 1. Helm's Medical Conditions in Light of the COVID-19 Pandemic

In determining whether Helm's medical conditions, in conjunction with the COVID-19 pandemic, meet the "extraordinary and compelling" standard, the

7

Application Notes to U.S.S.G. § 1B1.13 again provide useful guidance. *Andrews*, 12 F.4th at 260 ("Because Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,' it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute [that pointed to U.S.S.G. § 1B1.13]." (citation omitted)). The Application Notes divide the "Medical Condition of the Defendant" into two subcategories: (i) terminal illness and (ii) non-terminal illness. Specifically, they state that the medical condition of the defendant constitutes an extraordinary and compelling reason if:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. [or]
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1(A) (U.S. Sent'g Comm'n 2018).

The Sentencing Commission explained that non-terminal illnesses were "intended

8

to include a wide variety of permanent, serious impairments and disabilities, whether functional or cognitive, that make life in prison overly difficult for certain inmates." Amend. 799 to U.S. Sent'g Guidelines Manual § 1B1.13. 1 (U.S. Sent'g Comm'n 2016).

In his motion, Helm does not claim that he is currently diagnosed with a terminal illness or a "serious" non-terminal illness that "substantially diminishes" his ability to provide self-care, as required by Sentencing Commission's policy statement. Instead, Helm contends that his asthma and, as the Government notes, history of smoking, in combination with the COVID-19 pandemic, create a heightened risk that he will die or suffer "grave health consequences associated with [COVID-19] . . . ." D.I. 53 at 8; D.I. 55 at 5.[2] The Government contests Helm's alleged asthma, D.I. 55 at 4–5, 26–28, but I assume for purposes of deciding this motion that Helm has asthma. The issue is whether Helm's alleged increased risk of health consequences associated with COVID-19 is "extraordinary

---

[2] The Government concedes that an inmate never offered a COVID-19 vaccine who has asthma or a history of smoking would meet the policy statement's standard of "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility . . . ." D.I. 54 at 15, 16 n. 5. Here, Helm received a COVID-19 vaccine, so I need not consider the Government's contention. D.I. 55, Exhibit A (medical records of Nov. 23, 2020).

9

and compelling" under § 3582(c)(1)(A)(i) in light of the guidance U.S.S.G. § 1B1.13 provides.

I find that Helm's preexisting conditions fall short of showing a risk of becoming "grave[ly]" ill from COVID-19. The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Roeder*, 803 F. App'x 157 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."). Having asthma or a history of smoking and risking exposure to COVID-19 is common or usual, rather than extraordinary. And the Third Circuit has repeatedly upheld the denial of motions by inmates suffering from asthma for sentence reductions during the COVID-19 pandemic, even when the inmate's asthma was paired with other serious comorbidities. *See, e.g., United States v. Hill*, 2022 WL 456327, at *1 (3d Cir. Feb. 15, 2022) (chronic liver disease and asthma); *United States v. Millhouse*, 2022 WL 396100, at *1–2 (3d Cir. Feb. 9, 2022) (cardiac disease and asthma); *United States v. Holloway*, 2022 WL 216976, at *1 (3d Cir. Jan. 25, 2022) (mild obesity, hypertension, and asthma). The Third Circuit has, on at least one occasion, treated smoking similarly. *United States v.*

10

*Nichols*, 849 F. App'x 334, 335 (3d Cir. 2021) (smoking and family history of heart disease); *see also United States v. Fertides*, 2021 WL 5918301, at *1 (2d Cir. Dec. 15, 2021) (finding no abuse of discretion in denying compassionate release despite inmate's asthma, obesity, and history of smoking in light of COVID-19); *United States v. Woodley*, 2021 WL 3871910, at *2 (6th Cir. June 29, 2021) (same, but well-controlled asthma, smoking, and high cholesterol).

Helm has presented no medical or other records to indicate poor health that would increase the likelihood that COVID-19 would cause him severe illness. According to the Presentence Investigation Report, Helm self-reported that he was "healthy," despite his asthma. D.I. 40 ¶¶ 116–17. And Helm has not alleged any change to his health status, nor do Helm's medical records support one. *See* D.I. 55, Exhibit A. Further, the BOP has taken various steps to reduce the likelihood that Helm will contract COVID-19. As noted above, the Government reports that the BOP had fully vaccinated roughly 70 percent of Fort Dix's inmate population as of January 11, 2022, and has taken extensive measures to control COVID-19's spread. D.I. 54 at 5–9. Helm's vaccination provides important additional protection. *See, e.g.*, Moderna COVID-19 Vaccine 48, Food & Drug Admin. (Dec. 17, 2020), https://www.fda.gov/media/144434/download (finding an mRNA vaccine protects those with "mild to severe asthma" from symptomatic COVID-19). As such, Helm's asthma and history of smoking, in combination with the risk

of contracting COVID-19 in light of current BOP efforts, is neither extraordinary nor compelling.

### 2. Helm's Family Circumstances

Under the Sentencing Guidelines, "Family Circumstances" requires the death or incapacitation of either: (1) the caregiver of the defendant's minor children or (2) the defendant's spouse or registered partner. U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1(C). I agree with Helm that this policy statement provides useful guidance. *See* D.I. 53 at 15 (citing U.S.S.G. § 1B1.13).

Helm alleges that his daughter's caregiver and legal guardian suffers or has suffered "from epilepsy on a regular basis[,] . . . bipolar disorder, depression[,] [] suicidal thoughts[,] . . . alcoholism[] [and] drug abuse issues"; he further alleges that the "New York Division of Family Services opened a case of child endangerment in the past year." D.I. 53 at 15. According to Helm, his "daughter is currently being cared for by [Helm]'s mother-in-law . . . , who currently suffers complications from congestive heart failure." D.I. 53 at 15. Helm raised many of these concerns with me previously at sentencing. Tr. at 10–14. But Helm provides no evidence that his mother-in-law's condition has or would likely render her incapable of being the caregiver for Helm's daughter. Further, Helm does not provide any evidence that New York or any other state has adjudged his daughter's legal guardian incapable or unfit. Additionally, as the Government notes, "it is

12

unclear whether [Helm] has any custodial rights with respect to his child or whether, if released, those rights would be recognized and he would actually be awarded custody of his daughter." D.I. 54 at 31. A state may well deny Helm custody, since authorities found marijuana and other related paraphernalia in Helm's daughter's bedroom, and Helm has committed several prior offenses. D.I. 40 ¶¶ 20, 50–78. Thus, Helm has not established that, even if his daughter's current caregivers were unable to care for the child, Helm would be able to do so. Helm's family circumstances do not tend to "convince or convert . . . by forcefulness of evidence," *Compelling*, Merriam Webster's Unabridged Dictionary, *supra*, and do not constitute an extraordinary and compelling reason for a sentence reduction.

### 3. Helm's Behavior While Incarcerated

Helm's participation in coursework while in prison, D.I. 53 at 22, is consistent with the rehabilitative goals of sentencing, 18 U.S.C. § 3553(a)(2)(D), and thus is neither extraordinary nor compelling. Similarly, commendations for Helm's effective use of technical vocational skills at FDC Philadelphia, D.I. 53 at 23–27, bode well for Helm's prospects upon release, but are not exceptional to a marked extent; further, I considered some of these commendations at sentencing, *see* Tr. at 16–18. The record contradicts Helm's assertion that he "has not received a disciplinary report during his incarceration in the BOP." *Compare* D.I. 53 at 14,

13

*with* D.I. 54-2 at 1 (sanctioning Helm for possessing a hazardous tool on Nov. 23, 2021). Thus, Helm's work and alleged good behavior while incarcerated do not constitute extraordinary and compelling grounds for compassionate release.

### 4. Joint Consideration of Factors

Helm's medical conditions in light of the COVID-19 pandemic, family circumstances, and behavior while incarcerated are also not extraordinary and compelling when considered jointly. Helm provides no additional considerations that arise when evaluating these factors in light of one another, and I am unable to ascertain any. For example, severe health risks would make it less likely that Helm could adequately care for his daughter. That a prisoner has a common ailment during a global pandemic, difficult family circumstances, and a record of efforts at rehabilitation does not rise to the level of extraordinary and compelling.

Therefore, Helm has not demonstrated an extraordinary and compelling reason for compassionate release, and that alone is sufficient to deny Helm's motion.

### B. § 3553(a) Factors

Even if Helm had demonstrated an extraordinary and compelling reason for compassionate release, I would still deny his motion after considering the factors set forth in 18 U.S.C. § 3553(a). *United States v. Cole*, 859 F. App'x 634, 635 (3d Cir. 2021) (finding § 3553(a) factors were an independent ground to deny a request

14

for compassionate release due to compelling family circumstances). As an initial matter, I considered these same factors at the time of sentencing on October 1, 2020, only 13 months prior to Helm's motion. *See* Tr. at 38–43, 45. Little has changed, and the factors support continued incarceration. *See Holloway*, 2022 WL 216976, at *1 (considering the District Court's recent evaluation of the sentencing factors in denying compassionate release).

The "nature and circumstances of [Helm's] offense" included possession of controlled substances (with intent to distribute) and of a firearm while on probation for a similar offense, and requiring Helm to serve out his sentence will better deter Helm from committing these crimes. 18 U.S.C. § 3553(a)(1); D.I. 40 ¶¶ 13–22. Helm's criminal history and violation of probation further support the need for deterrence, and police discovery of drugs and related paraphernalia stored in Helm's daughter's bedroom supports the need to protect the public. 18 U.S.C. § 3553(a)(2); D.I. 40 ¶¶ 13, 16, 20, 47–79. Additionally, Helm has served less than half of his sentence; the lack of time to realize the sentence's deterrent and protective value weighs against granting compassionate release. *See United States v. Aguibi*, 858 F. App'x 485, 487 (3d Cir. 2021) ("The District Court also reasonably determined that the fact that [the prisoner] had served less than half of his 180-month sentence weighed against him." (citation omitted)). The relevant Sentencing Commission policy statement, U.S.S.G. § 1B1.13, does not support

15

compassionate release, as explained above, and granting compassionate release would create sentencing disparities, not avoid them. 18 U.S.C. § 3553(a)(5), (a)(6). Victim restitution is not relevant here. 18 U.S.C. § 3553(a)(7).

Finally, the kinds of sentences available and their established ranges weigh against compassionate release. 18 U.S.C. § 3553(a)(3), (a)(4). Helm's Sentencing Guidelines range for imprisonment was 110–137 months. Tr. at 3, 8. I granted, without objection from the Government, a downward departure of Helm's criminal history category, resulting in a Guideline range of 100–125 months. Tr. at 8. Thus, Helm's 72-month sentence reflects an additional downward variance of 28 months. The Third Circuit has upheld district courts' consideration of a downward variance in evaluating a motion for compassionate release. *See, e.g., United States v. Thomas*, 2022 WL 296594, at *1 (3d Cir. Feb. 1, 2022) ("[The district court] also observed that Thomas had served less than one-third of his term of imprisonment—which, as noted, already included a seven-year downward variance from the Guidelines range. Under these circumstances, the Court did not abuse its discretion in finding that the § 3553(a) factors defeated Thomas's petition for release."); *United States v. McLean*, 2021 WL 5896527, at *2 (3d Cir. Dec. 14, 2021) (upholding on appeal the district court's consideration of a downward variance in evaluating § 3553(a) factors). Thus, the § 3553 factors weigh against

16

compassionate release, even when balanced against the medical conditions, family circumstances, and good behavior that Helm raised.

## III. CONCLUSION

Since Helm has not provided extraordinary and compelling reasons for release and since the § 3553(a) factors weigh against release, I will deny Helm's motion for compassionate release.

The Court will enter an Order consistent with this Memorandum Opinion.